IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

    v.

BRIAN J. GARBE,

        Defendant.

Case No.: 19-cr-53-wmc

---

GOVERNMENT'S SENTENCING MEMORANDUM

---

For years, the defendant secretly bought, looked at, and downloaded images and videos of children engaged in sexually explicit conduct. He purchased some videos and images from a hidden Website and got some from other sources. He was finally caught in 2019 and has now been convicted of receiving child pornography. The defendant's guideline range for this offense is 97-121 months. The government assumes the Court will follow its practice of reducing the guideline range by two levels for use of a computer, making the range 78-97 months. Even if one disregards the guidelines as the defendant asks the Court to do, for the reasons below, a sentence in that range is still warranted in this case.

**FACTS**

In March 2012, Homeland Security Investigations (HSI) special agents in Phoenix initiated an investigation into Website M after an interview with a suspect in a child exploitation investigation. (R. 37-3, ¶ 16). Agents assumed the suspect's identity on

Website M and made several undercover purchases of child pornography during the course of the investigation. (Id., ¶¶ 19-22).

Agents learned that Website M was only accessible if the user knew its current web address. (R. 37-1, ¶ 7). It required a username and password to enter, and the home page depicted nude anime. (Id). Website M users reported receiving an email message inviting them to join the site after purchasing child erotica from another website. (R. 8). They received a sample of child pornography and were asked if they wanted to see more. (Id.). When they clicked yes, they were sent instructions with how to access and join Website M. (Id.).

Once a member of Website M, people could purchase password encrypted files containing multiple images and/or videos of child pornography and child erotica. (R. 37-1, ¶ 10). Before a person purchased a file, they were allowed to preview samples of the images and videos contained in the file they were considering purchasing. (Id., ¶ 11). Once a user downloaded a file, they would enter in the purchased password to "decrypt" the file. (Id.).

Following an undercover purchase made on May 26, 2017, the agent received an email that revealed the name of Website M's payment processor. (Id. 37-1, ¶ 16). On July 31, 2017, a District of Arizona Magistrate Judge signed a search warrant for the processor. (Id., ¶ 18). The processer provided HSI with customer names, addresses, phone numbers, emails, and the names of each file purchased. The processor records indicated that the defendant made three purchases from Website M between February

2016 and October 2016. (Id., ¶ 24). It also indicated he signed onto Website M numerous times between September 2015 and March 2, 2018. (Id., ¶ 25).

The items purchased by the defendant included an almost seven-minute video showing a prepubescent male and female engaging in masturbation, oral sex, and sexual intercourse, an image of an adult penis being pressed against the vagina of a prepubescent girl's vagina, and an image of an adult penis being inserted into the mouth of an infant. (R. 54, ¶ 11).

On November 29, 2018, law enforcement executed a search warrant at the defendant's home, where agents seized numerous electronic devices. On the devices, agents found more than 1000 images and numerous videos of child sexual assault material (CSAM). While the National Center for Missing and Exploited Children (NCMEC) identified 1172 images and six videos, those were only the images of known victims. There were additional images and videos depicting CSAM with unidentified victims, so the number the defendant actually possessed is higher. In addition to the images the defendant purchased from Website M, other images found on his electronic devices depicted children as young as three years old. (R. 54, ¶ 20).

Agents interviewed the defendant at the time they executed the search warrant. In the interview, the defendant admitted to watching all kinds of pornography, including "teen and kid stuff." (R. 54, ¶ 16). He admitted searching for child pornography and said he had been looking at it for the past five years, looking for something to "change his mood." (Id., ¶ 20). He specifically denied an "addiction" to child pornography but characterized it as "curiosity." (Id., ¶ 17).

3

# ARGUMENT

## I. The Guidelines

At the outset, it is important to note that "Congress has long expressed its concern for child pornography offenses and the severity of penalties for child pornography offenders." U.S. Sentencing Comm'n, Federal Sentencing of Child Pornography: Non-Production Offenses 12 (2021). The Court "in the course of selecting an appropriate sentence, ought to give respectful attention to Congress' view that crimes such as [the defendant's] are serious offenses deserving serious sanctions." *United States v. Grigg*, 442 F.3d 560, 564-65 (7th Cir. 2006).

It is no secret that a debate has been playing out in district courts throughout the country concerning the application of the Sentencing Guidelines in child pornography cases. And while it's true that many of the enhancements apply to many of the defendants, that does not undermine the reasoning for them, which goes to the nature and the circumstances of the offense.

For example, the guidelines call for a two-level enhancement for possessing images of pre-pubescent minors. USSG §2G2.2(b)(2). Sadly, both producers and consumers of child pornography have a morbid fascination with the sexual abuse of especially young children – perhaps because they cannot or do not fight back or realize what is occurring to them. It is self-evident that the Sentencing Guidelines seek to punish those whose conduct encompassed the sexual abuse of what the Sentencing Commission has identified as a more vulnerable population of children.

Similarly, the guidelines call for an enhancement for possessing sadistic and masochistic conduct. "[S]adistic and masochistic conduct includes sexual gratification

4

which is purposefully degrading and humiliating, conduct that causes mental suffering and psychological or emotional injury in the victim." *United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999) (finding that an image of a girl being urinated on qualifies for four-level increase as sadistic). "Sadistic perversion involves 'gratification ... obtained through cruelty' and masochism is 'abnormal sexual passion in which one finds pleasure in ... being abused or dominated'" and "sadism and masochism do not require the kind of violence 'we normally consider' as violence." *Id*. at 739.

In order for §2G2.1(b)(4) to apply, the image must depict sexual activity involving a minor and portray conduct that would cause an objective viewer to believe that the pictured activity is inflicting physical pain, emotional suffering, or humiliation of the minor. *See, e.g., United States v. Rearden*, 349 F.3d 608, 614-615 (9th Cir. 2003); *United States v. Corp*, 668 F.3d 379, 389 (6th Cir. 2012). While this enhancement may apply to a large number of cases, there is simply no reason to not apply the enhancement and/or mitigate the defendant's sentence on this ground. Doing so would only minimize the terrible harm inflicted upon the victims in the images and videos.

Additionally, Section 2G2.2(b) provides for graduated enhancements based on the presence of a number of aggravating factors, including the number of images a defendant possesses. Subsection (b)(7) calls for a two-level enhancement if a defendant possesses more than ten but less than 150 images, a three-level enhancement for possessing between 150 and 300 images, a four-level enhancement for possessing between 300 and 600 images, and a five-level enhancement for 600 or more images.

5

Thus, the guidelines consider defendants who possess more images to be more culpable than those who possess fewer images. That is only logical.

It may be true that many child pornography defendants who comes before the Court possess more than 600 images. But that is because the government rarely, if ever, brings federal criminal charges against people who possess anything less. Those offenders typically end up in state court. Ordinarily, only the most prolific possessors (i.e., the most serious offenders) are prosecuted federally. Thus, it is hardly surprising that this Court typically sees only defendants who possess thousands of images of child pornography. But that does not in any way diminish the seriousness of defendant's conduct.

**II.     2021 Sentencing Commission Report**

On June 29, 2021, the Sentencing Commission issued a new report on the Federal Sentencing of Child Pornography Non-Production Offenses. https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses. This new report reflects upon the Commission's report from 2012, and compiles data from 2019. The Commission emphasized the seriousness of non-production offenses, noting that child pornography offenses normalize the sexual abuse of children and may promote existing tendencies towards sex offending and the production of new images. *See* Report at page 1. The Commission also found that the rise of the internet facilitated the growth of online child pornography "communities" in chat rooms and other online platforms. *Id.* While the Commission notes that some of the enhancements no longer are helpful in

6

distinguishing among offenders, the Commission noted additional factors that a Court can consider when fashioning a sentence: (1) the content of the offender's child pornography collection and nature of the offender's collecting behavior; (2) the offender's degree of involvement with other offenders, particularly in an internet community devoted to child pornography and child sexual exploitation; and (3) the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense. *Id.*

The three images described in the PSR that form the basis for the charges are disturbing. (R. 54, ¶ 11). Other images showed children as young as three, all engaged in sex acts. (Id., ¶ 20). The presence of such young victims and the content of some of the material that this defendant sought out, viewed, and possessed makes his criminal activity all the more serious and egregious.

Additionally, this was not a case where the defendant randomly stumbled upon child pornography on one occasion. Instead, this is a defendant that logged onto a website specifically dedicated to the active distribution of child sexual abuse material. He purchased images on several occasions and accessed Website M "numerous times" over the course of two and a half years, actively participating in an internet community devoted to child pornography and child sexual exploitation

The Commission's new Report found that in fiscal year 2019, the average sentence imposed increased from 71 months for offenders who engaged in neither an online child pornography community nor aggravating sexual conduct, to 79 months for offenders who participated in an online child pornography community, like this

7

defendant. *See* Report at page 6. This average sentence is within the Government's recommendation.

### III. Application of the Section 3553(a) Factors

Even if the Court totally disregards the guidelines, the statutory sentencing factors still weigh in favor of a sentence between 78 and 97 months. In sentencing the defendant, Title 18, United States Code, Section 3553(a) directs this Court to focus on who the defendant is and what the defendant did (Section 3553(a) (1)), and to address various societal goals in sentencing (Section 3553 (a) (2-7)). Notably, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant. Rather, a correct application of these factors to any case involves a balancing of all of the factors, which include the guidelines, the defendant's criminal conduct, and its impact upon the victims - not just a consideration of the defendant's background and history. A solitary focus on only the defendant is certainly not an appropriate manner in which to apply the § 3553 factors to this case.

### IV. A sentence between 78 and 97 months is appropriate under the Section 3553(a) factors.

In this case, the advisory Guidelines range is 97-121 months. Once the Court reduces the range by two levels for use of a computer, the range becomes 78-97 months. As set forth below, in light of the conduct in this case, and under the factors set forth in Section 3553(a) of Title 18, a further downward variance from the original guideline range is unwarranted.

A.     The nature and circumstances of the offense

This case commenced when law enforcement discovered that the defendant was purchasing child pornography files from a hidden website. When his residence was searched and he was interviewed, the defendant admitted that he had been viewing child pornography for five years. Forensic examination revealed more than 1000 images and numerous videos of very young children and oral and vaginal penetration of prepubescent minors. The volume and nature of the defendant's collection, the length of time he has been involved in child pornography, and the kinds of images and videos he collected all show the serious nature and circumstances of the offense are serious and demonstrate that the government's requested sentence is warranted.

B.     The history and characteristics of the defendant

It is true that the defendant has no prior arrests or convictions, a fact that is already taken into account in the Guidelines calculation and one not uncommon in this type of case. *See, e.g., United States v. Oberg*, 877 F.3d 261 (7th Cir. 2017) (30-year sentence for conviction of § 2251 offenses involving one victim reasonable; district judge properly noted that defendants in child pornography cases often have limited criminal histories).

It is also true that the defendant claims to have an "addiction" to pornography and said he previously "investigated" getting help for it. However, he opted not to do so. (R. 54, ¶ 17).

While the defendant had a chaotic childhood, he currently has a supportive family. His military career led to a PTSD diagnosis which originally went untreated,

9

but he was later able to see a mental health provider who changed his medication, leading to positive changes in the defendant's life. (R. 54, ¶ 64, 71). He was a valued employee as an avionics technician. (Id., ¶ 74). In fact, the defendant stated when he was arrested that "he did not want his life in the real world to change." (Id., ¶ 17). Nothing about this history suggests a sentence below the guidelines is warranted.

    C.       General deterrence

Child pornography offenses are unquestionably among the most serious crimes prosecuted in federal court. The availability of child pornography has grown exponentially over the Internet, and online communities validate child sexual exploitation. Imposing serious penalties on individuals who fuel this market may deter other individuals from joining its ranks.

    D.       The needs of the public and the victims of the offense

Imposing serious penalties on those who seek, view, and save child pornography serves the interest of the victims portrayed in these images and videos. These victims are harmed not only when the child pornography is produced, but on a perpetual basis, as their images are endlessly re-distributed over the Internet. Downloading, sharing, and possessing child pornography – these are not "victimless" offenses. The victims depicted in the child pornography continue to suffer knowing that the most traumatic moments of their lives are endlessly recirculated, endlessly downloaded, endlessly viewed by individuals like the defendant who take great pleasure in what caused those victims tremendous harm. *United States v. Shutic*, 274 F.3d 1123, 1126 (7th Cir. 2001); *United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("[C]hildren depicted in the

pornography suffer a direct and primary emotional harm when another person possesses, receives or distributes the material."). Even a "'passive' consumer who merely receives or possesses the images directly contributes to this continuing victimization." *Sherman*, 268 F.3d at 545 (citations omitted). "Indeed, one of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted." *Sherman*, 268 F.3d at 547.

The continuing impact of the defendant's crimes is reflected in the victim impact statements that some of the victims have provided. The interests of these victims in a sentence that reflects the seriousness of the harm they continue to suffer should not be minimized. The harm to each child weighs against a downward variance below the Guidelines range.

## CONCLUSION

For all of the foregoing reasons, the government respectfully recommends that this Court impose a guideline sentence to be followed by a lengthy term of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Dated this 23rd day of September 2021.

        Respectfully submitted,

        TIMOTHY M. O'SHEA
        Acting United States Attorney

By: \_\_\_\_\_/s/_____
        ELIZABETH ALTMAN
        Assistant United States Attorney